# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

Joseph Anger,

       Plaintiff, on behalf of all
       Others similarly situated,

v.

Accretive Health, Inc. d/b/a Medical
Financial Solutions,

       Defendant.

Hon. Victoria A. Roberts
Case No. 14 – cv – 12864

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED................................................iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES...............iv

INTRODUCTION............................................................................1

FACTS........................................................................................2

ARGUMENT.................................................................................4

   I.      Standard of Review............................................................6

   II.     Accretive Health is a Debt Collector.....................................6

   III.   Plaintiff's Claims Are Sufficiently Pled...............................12

          a.  1692e And 1692f Claims Are Sufficiently Pled....................12

          b.  Plaintiff's State Law Claims are Sufficiently Pled.................19

   IV.   Plaintiff has Standing......................................................23

CONCLUSION..............................................................................29

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiff has adequately alleged claims under the FDCPA (Count I) and state and municipal statutes (Counts II-IV) where (1) Defendant is a debt collector and therefore covered by the FDCPA because it treated the debt as if it were in default at the time of acquisition, and (2) the Michigan Occupational Code and similar state statutes do not require the debt to be in default, and Defendant fails to cite a single case that suggests otherwise.

2. Whether it is too soon to assess that Plaintiff lacks standing to bring claims III-V on behalf of a class when (1) Plaintiff has shown that he has suffered an injury,  (2) the class has yet to be certified, and (3) case law holds that class certification is "logically antecedent" to issues of article III standing.

3. Whether Plaintiff's claims are sufficiently pled where he makes detailed factual allegations of Defendant's violations of the FDCPA and state laws, which are more than adequate to state a plausible claim and provide Defendant with fair notice of that claim.

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ...…………………………………………..……23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ………...……………………………………..6, 13

*Bridge v. Ocwen Fed. Bank, FSB*,
  681 F.3d 355, 359 (6th Cir. 2012) ……………...……………….....5, 6

*Church v. Accretive Health, Inc.*,
  2014 WL 7184340 (S.D. Ala. Dec. 16, 2014) …………………….…..9, 10

*Currier v. First Resolution Inv. Corp.*,
  762 F.3d 529  (6th Cir. 2014) ...…………………………………….17, 18

*Frey v. Gangwish*,
  970 F.2d 1516, 1521 (6th Cir. 1992) ...…………...……………….6, 12, 17

*Hoving v. Transnation Title Ins. Co.*,
  545 F.Supp. 2d 662 (2008) ...…………………………………….23, 24

*In re Polyurethane Foam Antitrust Litigation*,
  799 F. Supp. 2d 777 …...……………………………………….24, 25

*Lovelace v. Stephens & Michaels Associates, Inc.*,
  WL 3333019 (E.D. Mich. Nov. 9, 2007) ...………………………....19, 29

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815, (1999) ……………………………………...…………..23

*Stratton v. Portfolio Recovery Associates, LLC*,
  770 F.3d 443 (6th Cir. 2014)……………………….…………..passim

**Statutes**

15 U.S.C. § 1692a ……………………………………………………………7, 11, 22

15 U.S.C. § 1692f ……………...…………………………………...…..passim

15 U.S.C. § 1692g …………………………………………….…….……...13

15 U.S.C. § 339.901 ……………………...……………………………...22

v

# INTRODUCTION

This case concerns a debt collection company, with a reputation for shockingly wrongful practices,[1] and which has violated federal, state, and local laws by, among other things, using a form letter, which fails to disclose that the company is a debt collector and instead describes the company as a consumer advocate and credit counselor of sorts.  Accretive Health Inc., dba Medical Financial Solutions ("Accretive") sends consumers letters that violate the Fair Debt Collections Practices Act ("FDCPA") and state laws.  Accretive plays "good cop-bad cop" and postures as an "iron fist in a velvet glove" in the letters, falsely claiming that the patient has defaulted on its payment plan with St. Mary's Hospital and representing that Defendant is a collection agency.  At the same time, Accretive's letters contain language that gives recipients the false impression that Accretive is also their advocate.  By scaring patients into believing that their account is in default and they will suffer serious repercussions if they do not contact Accretive immediately, and also omitting the "Mini Miranda Warning" required by law, Accretive is able to obtain an illegal and unfair advantage over debt collectors that give the legally required "Mini Miranda Warning," notifying patients that any information the patient provides will be used against him to

---

[1] Because of its deceptive practices and violations of debt collection statutes, Accretive Health, Inc. was barred from doing business in Minnesota for two years after intimidating and harassing patients in hospitals, and additional restrictions have been attached to their ability to do business within the state for a four year period after the ban is lifted. Ex. 1 ¶¶ 25-27; Ex. 4.

1

collect a debt.  Further, by falsely posing as a patient advocate, the letter induces patients to call Accretive in lieu of other debt collectors not posing as patient advocates.  Accretive's agents are then able to deceive and/or intimidate patients to pay debts that they do not owe at the time or at all.

Defendant brings a motion to dismiss, which must fail for numerous reasons. First, Accretive is clearly a "debt collector" under Sixth Circuit precedent. Accretive treated Plaintiff as if his debt was in default at the time of its first form letter communication with the consumer.  The same form letter was the subject matter of litigation in the United States District Court in Alabama, which held that because Accretive's form letter treated the consumer as if he were in default, Accretive is a "debt collector" under the FDCPA.  Second, Plaintiff has more than adequately met the notice pleading requirements of *Twombly*.  Finally, it is too soon to address any standing issues because class certification is "logically antecedent" to Article III issues.

## FACTS

This case arises from Defendant's violations of the FDCPA, Michigan laws governing debt collection, and other state and local laws governing debt collection and protecting consumers from unfair and deceptive acts and practices by Defendant, one of the nation's largest collectors of medical debt.  (Ex. 1, ¶¶ 2-6, 13, & 17).  Specifically, Defendant sends collection letters to patients which, inter

alia, fail to disclose that Defendant is a debt collector and that any information obtained will be used to collect a debt (Ex. 1, ¶ 4); deceives recipients by falsely representing that Defendant is a branch of the creditor organization, which works closely with patients to ensure their debt does not go further into collections (Ex. 1, ¶ 5); and falsely states that the debt is in default (Ex. 1, ¶ 16). Once in receipt of the uniform letters, members of the class are again subject to violations of the FDCPA and state laws regulating debt collection, as Defendant's employees fail to disclose that phone calls are an attempt to collect a debt and falsely represent that accounts will not go to collections if they remain unpaid. (Ex. 1, ¶ 23).

By way of example of Defendant's multiple violations, on May 5, 2014, after Plaintiff incurred a debt at St. Mary's Hospital, Plaintiff received a letter from Defendant. (Ex. 2). The letter failed to disclose that the company is a debt collector and falsely stated that the full amount of the debt was "due upon receipt," even though Plaintiff had established a payment plan with St. Mary's Hospital and was current on all his payments. (Ex. 2). The letter further deceptively stated that the company is a "non-credit reporting, third-party agency" that "works directly with St. Mary's of Michigan Standish Hospital to ensure your account is protected from moving further in collections." (Ex. 2). In other words, Accretive communicated—contradictorily, confusingly, and deceptively—that although it is

3

a collection agency, its purpose is nonetheless just the opposite: to protect the patient in default from additional collections activity.

After receiving the letter and as directed by the letter, Plaintiff's wife then contacted Defendant by telephone, explaining to the representative that Plaintiff and St. Mary's Hospital had entered into a payment plan and Plaintiff had made all payments due and owing. (Ex. 1, ¶ 17). Defendant repeatedly stated that it had no record of the payment plan, but after further conversation finally conceded the existence of a payment plan and offered to correct its records.[2] (Ex. 1, ¶ 17).

However, despite adhering to the payment plan with St. Mary's Hospital and Defendant, Plaintiff received another letter from Defendant, dated May 29, 2014, which contained additional violations of debt collection laws and further stated, incorrectly, that Plaintiff's debt was *past due*. (Ex. 3; Ex. 1, ¶ 19). Again, the letter deceptively described Defendant as an advocate for debtors, protecting the patient from debt collectors; offering to connect the debtor with "opportunities" and "programs available to help;" and acting as if the debt collection company is actually a financial consultant that will provide "financial solutions" to the patient debtor. (Ex. 3; Ex. 1, ¶ 22).

---

[2] Defendant's representative, due to what she claimed were record keeping limitations of Defendant's computer system, offered to revise the payment plan to monthly installments, instead of bi-weekly. Plaintiff accepted, but continued to pay bi-weekly as directed by the original agreement with St. Mary's Hospital. During all relevant times, Plaintiff's payments were either current or paid ahead of schedule.

However, when Plaintiff's wife again called Defendant, its representative, after repeated questioning, finally admitted the company was a debt collection agency. (Ex. 1, ¶ 23). The employee then falsely informed Plaintiff's wife that Defendant is a "registered" collection agency, when, in fact, the company is not registered in Michigan. (Ex. 1, ¶ 23). She further made inaccurate and deceptive remarks, contradicting her earlier statements, when she told Plaintiff's wife that Accretive is "an extended billing office for St. Mary's and help[s] manage balance resolution." (Ex. 1, ¶ 23).

This is not the first time Defendant has attempted to confuse parties about its status as a debt collector. In Minnesota, Defendant posed as hospital-based patient advocates, approaching patients in the hospital and causing them to believe they would not receive emergency and child birth care unless they paid medical bills Accretive claimed were in default. As a result, Defendant was barred from doing business in the state for two years and additional restrictions were imposed on the company for four years following the ban. (Ex. 4). In Michigan as well, this chameleon Defendant deceptively changes its colors to camouflage and deceive in an attempt to elude the requirements of law. But FDCPA "coverage is not defeated by clever arguments for technical loopholes that seek to devour the protections Congress intended." *Bridge v Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012), and, for that reason and those stated within, Defendant's motion must fail.

## ARGUMENT

I. **Standard of Review**

A complaint under Federal Rule of Civil Procedure 8(a)(2) must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In analyzing the sufficiency and plausibility of the claim, a court construes "the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).

II. **Accretive Health is a Debt Collector**

Accretive claims that it is not a debt collector, so the FDCPA does not apply. However, the Sixth Circuit has recognized that the FDCPA "is an extraordinarily broad statute," *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992), and has repeatedly interpreted the FDCPA to apply to those who, like Accretive herein, treat the debt as if it is in default. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012).

The FDCPA, defines a debt collector as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.... The term does not include—

…

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) concerns a debt which was not in default at the time it was obtained by such person....

15 U.S.C. § 1692a(6)(emphasis added).   An entity can be classified as either a creditor or a debt collector for purposes of the FDCPA, and its status will depend "on the default status of the debt at the time it was acquired." *Bridge*, 681 F.3d at 359.

Accretive argues it is not a debt collector because the debt was not in default when it was acquired.   But, in the Sixth Circuit, "a FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default." *Id.* at 362-63.   The Sixth Circuit Court of Appeals and District Courts within the Sixth Circuit have repeatedly held that the default status of a debt will depend on how the entity *treats* the debt.[3]   A debt collector under the FDCPA,

---

[3] *See also, Harris v. LNV Corp.,* 2014 WL 3015293, at *7 (M.D. Tenn. July 2, 2014)(holding that defendants were debt collectors despite their claims that debt was not in default where defendants sent letters with words indicating the debt was in default and "concede[d] they believed the debt to be in default at the time of transfer.")(Ex. 5); *Justice v. Ocwen Loan Servicing, LLC,* 2014 WL 526143 (S.D. Ohio Feb. 7, 2014)(Ex. 6).

therefore, includes "any non-originating debt holder that … treated the debt as if it were in default at the time of acquisitions," *Id.* at 362, and the Sixth Circuit has recognized that:

> This interpretation of the Act is supported by Congress's intent in passing it.
>
> 'This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or *mistaken facts.* This bill will make collectors behave responsibly towards people with whom they deal.'

*Id.* at 359 (quoting H.R.Rep. No. 131, at 8)(emphasis in opinion).

Defendant argues that Plaintiff has "pled himself out of court" by asserting that the debt was never in default.   However, courts in Sixth Circuit have repeatedly held that this defense is meritless in FDCPA litigation, because the actual status of the account is irrelevant in cases where the defendant treated the debt like it was in default.   *Justice v. Ocwen Loan Servicing, LLC*, 2014 WL 526143, at *5 (S.D. Ohio Feb. 7, 2014)(Ex. 6).   In *Justice v. Ocwen Loan Servicing*, the court rejected defendant's argument that "Plaintiffs were not 'in default' based on Plaintiffs' own complaint."   *Id.* at fn. 3.   The court recognized that the Sixth Circuit had already addressed this argument and "did not find it compelling:"

> We note **this argument is exemplary of an unsettling trend in FDCPA claims**. Defendants seek to have it both ways: after having engaged in years of collection activity claiming a mortgage is in

8

default, Defendants now seek to defeat the protections of the FDCPA by relying on Plaintiffs' position throughout those years that the mortgage is not in default. As noted in the analysis of the Third Circuit, **FDCPA coverage is not defeated by clever arguments for technical loopholes that seek to devour the protections Congress intended**.

*Id.* at fn. 3 (quoting *Bridge,* 681 F.3d at 361)(emphasis added).

*Haber v. Bank of America*, 2014 WL 2921659, at *1 (E.D. Pa. June 27, 2014)(Ex. 7), is an instructive case out of the Third Circuit, which applies a similar test to the Sixth Circuit to assess whether an entity is a debt collector or a creditor under the FDCPA.  In *Haber*, plaintiffs were sent two letters from REDC with language formulated to elicit the exact same response as the language at issue in the present case—a sense of urgency and the impression that the account was already in default.  REDC argued that it was not a debt collector because, as in the present case, plaintiffs asserted that their account was never in default.  The court held that the default status of the account was irrelevant; an entity is a debt collector for purposes of the FDCPA when it "classified the debt as in 'default' at the relevant time." *Id.* at *15.  Applying this test, the court concluded that it could be reasonably inferred that REDC classified plaintiffs' debt as in default from the language of the collection letter. *Id.*  The court was particularly persuaded by the inclusion of the words "we want to help you avoid foreclosure" and the emphasis on the urgency of the matter. *Id.*

9

In *Church v. Accretive Health, Inc.,* 2014 WL 7184340 (S.D. Ala. Dec. 16, 2014)(Ex. 8), the court found that Accretive's own letters, employing **identical** language to the letter at issue here, treated the account as in default at the time it was acquired.  Accretive was therefore a "debt collector" under the FDCPA for purposes of a motion to dismiss.  In dismissing the motion, the court analyzed the first letter that Accretive sent to plaintiff, to assess whether the debt was in default at the time of acquisition. *Id.* at *4-6.  The court was particularly persuaded by the same language at issue in our case—"Our company works directly with [the hospital] to ensure your account is protected from moving further into collections." *Id.* at *4.  The court reasoned that "language in the letter warning that [plaintiff's] account may move '**further into collections**' suggests that default had already occurred." *Id.* at *6.   It further found that Accretive's inclusion of the language "'[i]t is very important we hear from you'" similarly supported the inference that the account was in default, and Defendant was therefore a debt collector under the FDCPA. *Id.* at *4.  In so holding, the court recognized that "reasonable inferences are resolved in [the nonmovant's] favor at the motion to dismiss stage." *Id.* at *6.

The very same language is at issue in the present case, and the letter makes it clear that Defendant treated Plaintiff's account as if it were in default at the time it was acquired.  Here, Defendant used scare tactics against Plaintiff, warning that his account may "move further into collections" and urged that Plaintiff contact

Defendant because it is "very important." (Ex. 2, Ex. 1 § 22). Just like in the *Church* and *Haber* cases, Defendant's language suggests that the account is already in default and stresses the urgent need to contact Defendant. Defendant's letter employs language that caused the patient to believe he had received a collection letter, because his account was in default. The language is clearly calculated to scare the least sophisticated consumer into contacting Defendant immediately, while at the same time lowering Plaintiff's guard—and confusing him with dissonant messages that overshadow and contradict eachother—by suggesting that Accretive is a consumer or patient advocate.

Defendant cites a number of cases, which provide no guidance. For instance, Defendant relies heavily on *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013). However, this case is inapposite because the defendant in *Glazer* never treated the debt as if it were in default. In fact, the opinion clearly states that plaintiff only made two arguments. First, plaintiff argued that the 1692a(6)(F)(iii) "exception only applies to mortgage servicers who *own* the debt obligation they service." *Id.* at 457 (emphasis in original). Second, he contended that "the exception does not apply to *sub* servicers... . *Id.* (emphasis in original). Whether the debt was treated as if it were in default was simply not an issue in *Glazer,* so it has no relevance here. Defendant's long string of cases has similar flaws. *See, e.g., Gould v. ClaimAssist*, 876 F. Supp. 2d 1018, 1023 (S.D. Ill.

11

2012)(recognizing that "[plaintiff] does not allege or offer any specific facts to show that the debt was in default."); *McLaughlin v. Chase Home Fin. LLC*, 519 F. App'x 904, 906 (6th Cir. 2013)(holding that defendant was not a debt collector where the loan was not delinquent at the time it was acquired and foreclosure proceedings were not commenced until roughly a year later and the debt was never wrongly treated as if it were in default).

Finally, Defendant asserts that even if Plaintiff's debt was delinquent, it was not delinquent long enough to be in default. This argument must fail because it runs afoul of the Sixth Circuit rule that the FDCPA protects the least sophisticated consumer who is not in default, but whom the debt collector speaks and act as if the consumer was in default, and therefore causes the consumer to believe that the debt collector regards the consumer to have defaulted. *Bridge,* 681 F.3d at 359. Defendant's motion should be denied because its arguments are baseless.

### III.   Plaintiff's Claims Are Sufficiently Pled

#### a.   1692e And 1692f Claims Are Sufficiently Pled

The FDCPA protects consumers against debt collectors who make "false or misleading representations and … engage in various abusive and unfair practices," *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995), and has been construed by the Sixth Circuit as "extraordinarily broad."  *Frey*, 970 F.2d at 1521.  "The Act says, for example, that a 'debt collector' … may not falsely represent 'the character,

amount, or legal status of any debt,' § 1692e(2)(A); and may not use various 'unfair or unconscionable means to collect or attempt to collect' a consumer debt, § 1692f." *Heintz,* 514 U.S. at 292.

Under the liberal pleading standards of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) all that is necessary to "survive a motion to dismiss" is to state "sufficient factual matter, accepted as true, to [support a] 'claim to relief that is plausible on its face.'" *Mellentine v. Ameriquest Mortgage Co.*, 515 F. App'x 419, 423-24 (6th Cir. 2013)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), and all that is necessary to state a claim under the FDCPA is to show that a Defendant made a material misrepresentation. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323 (6th Cir. 2012). In fact, standing alone, Plaintiff's claim that Defendant failed to include the required disclosures is more than sufficient to withstand a motion to dismiss. *Savage v. Hatcher*, 109 F. App'x 759, 761 (6th Cir. 2004). However, as discussed more thoroughly below, Plaintiff has adequately pled numerous violations of FDCPA sections 1692e, 1692f, and 1692g (Defendant does not dispute the validity of the 1692g claim, so that claim is not at issue).

The measuring rod for FDCPA claims is the least sophisticated consumer. Yet, Defendant cites misleading portions of the *Wallace* opinion which fail to distinguish between the unsophisticated consumer and the least sophisticated consumer standards. In the Sixth Circuit, "whether a debt collector's actions are

13

false, deceptive, or misleading under [the FDCPA] is based on whether the '**least sophisticated consumer**' would be misled by defendant's actions." *Id.* at 326. While the difference is subtle, there is a difference between the two standards,[4] and the least sophisticated consumer test is the more lenient of the two.

> 'The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.' [*Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993).] 'This effort is grounded, quite sensibly, in the assumption that **consumers of below-average sophistication** or intelligence are especially vulnerable to fraudulent schemes.' *Id.* at 1319.

*Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 450 (6th Cir. 2014)(emphasis added).   Nonetheless, even applying the stricter test, the *Wallace* court found that plaintiff had more than adequately pled her claim under the FDCPA where plaintiff merely alleged that defendant falsely represented that it was the holder of the mortgage and this false representation caused plaintiff "confusion and delay." *Wallace,* 683 F.3d at 327.

Defendant again misstates the law when it claims that Plaintiff is required and has failed to show how he was harmed by Defendant's actions.  The FDCPA is a strict liability statute and a showing of damages is not necessary. Because the FDCPA is "a strict-liability statute: A plaintiff does not need to prove knowledge

---

[4] *See, e.g.,* Shaffer, Elizabeth M., *Pitfalls in Collection Letters Under the Fair Debt Collection Practices Act and Ohio Consumer Sale Practice Act*, p. 8 (discussing the difference between the two standards).

or intent and does not have to have suffered actual damages." *Stratton*, 770 F.3d at 448-49. (internal citations omitted).

In fact, the *only* elements of a claim under 1692e are: "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions." *Wallace*, 683 F.3d at 326.  Plaintiff has alleged, inter alia, the very same "damages" that were sufficient in *Wallace*.  At the very least, Defendants misrepresentations caused Plaintiff "confusion and delay," resulting in multiple unnecessary, lengthy, and frustrating phone calls with Defendant (Ex. 1, ¶¶ 17, 20, 23).  In addition, Defendant calls and leaves messages on consumer's work phones, subjecting them to embarrassment and other ramifications (Ex. 1, ¶ 28).  So while a showing of damages is unnecessary, Plaintiff has adequately pled that Defendant's actions have caused harm.

Defendant's use of *Scheuer v Jefferson Capital System, LLC,* 2014 WL 4435874 (E.D. Mich. Sept. 9, 2014)(Ex. 9) provides no guidance because *Scheuer* is a unique case where the defendant merely stated it was a creditor instead of a debt collector in its communication with plaintiff, but it was in compliance with the FDCPA in all other respects.  Using common sense, the court held that this would not deceive the least sophisticated consumer because such a consumer

would not understand the "nuances" of the FDCPA. *Id.* at *6. The least sophisticated consumer would understand the term "creditor" under its common meaning to be an entity to which he owes money. Therefore, the difference between debt collector and creditor was irrelevant to the consumer's understanding of the nature of its debt and not misleading under the FDCPA; even though defendant was a debt collector, under the "ordinary understanding of the term 'creditor,' [defendant] is Scheuer's 'current creditor'—just as it is claimed to be in the letter." *7. For similar reasons, the court held that even if defendant's statements were false, they were not material, because plaintiff "failed to identify a single way in which [defendant's] allegedly-false statements would actually affect the course of action chosen by the least sophisticated debtor." *Id.* at 11. Conversely, here Plaintiff has stated, among other things, that Defendant failed to state its required disclaimers, misrepresented itself as a consumer advocacy group, and misstated the nature and amount of the debt. All of these actions, individually and collectively, serve to disarm the consumer of the protections afforded by the FDCPA and would clearly affect his chosen course of action. A consumer is far more likely to be forthcoming with an agent of a consumer advocacy group than with a debt collector. He may make statements that can later be used against him, for example. Consumers also could be duped by Accretive into paying debts that are not yet due or that they do not owe.

16

Defendant next incorrectly asserts that Plaintiffs § 1692f claim must fail because the alleged conduct "fits within another provision of the FDCPA." (Defendant Brief, p. 12, quoting a non-precedential case). This argument must fail for two reasons. First, it is a blatant misstatement of the law. "The FDCPA's broad provisions **are not** mutually exclusive." *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 448-49 (6th Cir. 2014)(emphasis added). The Sixth Circuit Court of Appeals has already decided this issue and held that a single action can violate multiple provisions. In so holding, the court, in *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014), stated, "[w]hile 'misleading' practices under § 1692e and "unfair" practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and are not mutually exclusive. A debt collector's action could be 'misleading' under § 1692e, 'unfair' under § 1692f, or, as alleged here, both."

The second reason this argument must fail is because the FDCPA is not as rigid as Defendant suggests. The courts regularly and repeatedly apply the FDCPA broadly and as justice requires to effect its purpose. *Stratton*, 770 F.3d at 448 (6th Cir. 2014); *see also Frey*, 970 F.2d at 1521; *Currier*, 762 F.3d at 533; *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir.2006) ("Because the FDCPA is a remedial statute, ... we construe its language broadly, so as to effect its purpose.").

Consistent with the Act's **expansive reach**, both sections provide a list of unlawful conduct "without limiting the general application of"

17

each section's broad prohibitions of "false or misleading representations" and "unfair practices." Thus, section 1692e forbids both "[t]he false representation of … the character, amount, or legal status of any debt," and the "threat to take any action that cannot be legally taken." And section 1692f(1) prohibits "[t] collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law." But the listed examples of illegal acts are just that—examples. Sections 1692e and 1692f "enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S. Rep. 95-382 at 4.

*Stratton,* 770 F.3d at 450 (emphasis added). Here Plaintiff has enumerated multiple acts, some of which are deceptive under 1692e, some of which are unfair under 1692f, and some of which are both. *Currier* 762 F.3d at 536.

In any event, Defendant's refusal to honor Plaintiff's payment plan is prohibited by 1692f(1). (Ex 1, ¶¶ 16-17, 19), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." § 1692f. Here Defendant is attempting to collect and, upon information and belief, is dunning debtors into paying amounts before they are due under their payment plans. "Defendant refuses to make a record of agreements or "payment arrangements", … so that no such records exist, … and it can continue to harass patients to pay outstanding balances in full before such payments are in fact due under settlement agreements or periodic payment over time arrangements." (Ex. 1, ¶ 20). *Savage,* 109 F. App'x at 761 (denying

defendant's motion for summary judgment because "it [was] not "beyond doubt that the plaintiff can prove no set of facts in support of his claim" that defendants sent plaintiff two letters "attempt[ing] to collect an amount greater than that authorized by the loan agreement.").

Here, Plaintiff has clearly stated multiple claims under the FDCPA. *See, e.g., Stratton*, 770 F.3d at 451 (holding that given the liberal least sophisticated consumer standard, "the plain language of the [FDCPA] and its expansive purpose," that plaintiff clearly "alleged a number of plausible FDCPA violations," including both § 1692e and 1692f where Plaintiff, among other things, alleges that Defendant is a debt collector but fails to make this disclosure in its communications.)(Ex. 1, ¶ 4), Defendant falsely represents that it is a patient advocacy group that provides financial assistance (Ex. 1, ¶ 5), Defendant misrepresents the nature of the debt and amount of the debt (Ex. 1, ¶ 15-16, 19, 21), Defendant fails to make its required disclosures (Ex. 1, ¶ 62), and Defendant threatens to take action that it does not intend to or cannot take (Ex. 1, ¶ 25).

**b. Plaintiff's State Law Claims are Sufficiently Pled**

Defendant admits that Plaintiff's state law claims "mirror" the FDCPA, and the court should therefore apply the same arguments and standards in deciding whether to dismiss those claims. In so doing, it cites a number of cases, including *Lovelace v. Stephens & Michaels Associates, Inc.*, 2007 WL 3333019, at *2 (E.D.

19

Mich. Nov. 9, 2007)(Ex. 10) for the proposition that the state law claims are similar to the FDCPA "and need not be addressed separately." In *Lovelace,* the court refused to grant defendant's request for summary judgment on plaintiff's section 1692e and 1692f claims and did not analyze the state law claims because they were sufficiently similar. *Id.* Plaintiff agrees with Defendant's assertion that a detailed analysis of the state law claims is unnecessary because they "nearly mirror" the FDCPA claims, and, therefore, Defendant's motion must fail because Plaintiff has adequately pled his causes of action.

Defendant next asserts, again, that Plaintiff has failed to meet the liberal pleading requirements of *Twombly,* but *Twombly* "requires **only** 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the ground upon which it rests.'" *Twombly,* 550 U.S. at 555. Here, it cannot be disputed that Plaintiff met that requirement. In paragraphs 2 -30 of his complaint he lays out a detailed recitation of the facts under which Defendant violated the FDCPA, and, as Defendant admits, state laws that "mirror" the FDCPA. In doing so, he goes above and beyond the pleading requirements imposed by the federal rules and as interpreted by *Twombly*, which does not require "detailed factual allegations" and provides Defendant with the requisite notice. *Id.* at 555.

20

Defendant cites *Soto v. Wells Fargo Bank, N.A.*, 2012 WL 113534, at *6 (E.D. Mich. Jan. 13, 2012)(Ex. 11) for the contention that listing "boilerplate-type allegations of wrongs but fail[ing] to articulate how [defendant] violated the act," will not satisfy the *Twombly* requirements, and Plaintiff agrees. However, this case provides no support for dismissal, and possibly helps Plaintiff's case, because *Soto* is a rare example of a complaint that failed to meet the liberal pleading requirements of *Twombly*. The facts show that the *Soto* plaintiff merely paraphrased provisions of the Michigan FDCPA and alleged that defendant violated those provisions. *Id.* at *6. He failed to articulate facts to demonstrate how defendant violated the statute, and that is the reason the court granted the *Soto* defendant's motion.

Here, the opposite is true. Plaintiff has alleged specific facts and examples which provide detail as to how Defendant violated the FDCPA and state laws. To give but one example, because the complaint is lengthy and detailed, Plaintiff provides detailed factual allegations that Defendant fails to notify consumers that it is a debt collector and its communication is an attempt to collect a debt (Ex. 1, ¶¶ 3-4, 61-67), and instead presents itself as a consumer advocacy group. (Ex. 1, ¶¶ 5, 22). This alone would be enough to satisfy the standard. *Savage*, 109 F. App'x at 761. But Plaintiff goes beyond the standard, providing specific examples of the language Defendant uses that misleads consumers, such as "Our company works

directly with [the hospital] to ensure your account is **protected** from **moving further** into collections" and that Defendant presents itself as a company "whose mission 'is to help [patients] to resolve ... unpaid balance[s]." (Ex. 1, ¶¶ 5, 22)(emphasis added). Plaintiff then attaches examples of the letters that violate the state laws and specifies which provisions of each state's law were violated. (Ex. 1, ¶ 62). Again, this is only one example. Plaintiff provides this level of detail for each of his claims, and has undoubtedly provided Defendant with more notice than it is entitled under the law to apprise it of the "claim ... and the ground upon which it rests." *Twombly,* 550 U.S. at 555.

Finally, although an analysis under Michigan law "mirrors" the analysis under the federal law as to the **violations**, Michigan law is much broader than the FDCPA in regards to coverage. "Michigan's Collection and Collection Agencies Act, M.C.L. § 339.901 *et. seq.,* applies to "collection agencies," which are statutorily defined as follows: 'a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect *a claim owed or due or asserted to be owed or due another,* or repossessing or attempting to repossess a thing of value *owed or due or asserted to be owed or due another* arising out of an expressed or implied agreement.'" § 339.901(b); *Fuller v. Exxon Mobil, M.C., ,* 2009 WL 91707, at *3 (E.D. Mich. Jan. 14, 2009)(Ex. 12). "This statute applies to third-party collection agencies," like Accretive. In short, Michigan law does not

have an exception similar to the FDCPA at 15 U.S.C. § 1692a(6)(F)(iii).   Its coverage is broader, and Defendant's motion must, therefore, fail.

## IV.   **Plaintiff has Standing**

Defendant's argument that Plaintiff lacks standing is baseless because it is simply too soon to assert such a claim.   It is well established that "class certifications issues are … 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing." *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831 (1999).

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the district court certified a class of plaintiffs who had been exposed to asbestos by the defendants. Objectors to the class argued that "exposure-only" claimants lacked standing to sue because they had not yet suffered an injury.   The Supreme Court, however, held that it was appropriate to address the Rule 23 requirements before deciding standing to sue.   *Id.* at 612.   Again, in *Fibreboard*, the Court applied the "logical antecedent" test and held that certification should be decided prior to any issue regarding Article III standing. *Fibreboard,* 527 U.S. at 831.

This logic is also consistent with the Sixth Circuit's interpretation of *Ortiz* and *Amchem* and its treatment of class actions containing claims under the laws of various states.   In *Hoving v. Transnation Title Ins. Co.,* 545 F.Supp. 2d 662 (2008),

23

the court decided the very same issue and applied the logically antecedent test.  In *Hoving*, plaintiff brought suit against a title insurance company for violating statutory provisions regarding rate setting and defined the class as:

> Person in the states of Michigan, Arizona, Colorado, Maryland, Minnesota, Missouri, New Jersey, Tennessee and Washington who, in connection with a mortgage refinancing, paid a title insurance premium for a Transnation title insurance policy the amount of which exceeded the rate on file in those states and/or exceeded a lower, reissue rate for which such persons qualified.

*Id.* at 664.  There, defendant also "claim[ed] that plaintiff lack[ed] standing to assert the rights of others under state laws other than Michigan's." *Id.* at 665.  The court was not persuaded, however, and held that in order to "proceed as a representative of a class [plaintiff] must still establish that his claim is typical of those individuals whose claims arise under the laws of other states and he can represent those individuals adequately ... therefore, the decision on class certification is logically antecedent to the determination of standing." *Id.* at 667-68.

Similarly, *In re Polyurethane Foam Antitrust Litigation*, 799 F. Supp. 2d 777, 806 (N.D. Ohio 2011), also held that standing issues are properly treated at the time of class certification, not before.  In so holding the court stated that ruling otherwise would "confuse Article III standing and Federal Civil Rule 23's requirements ... ." *Id.*  The court reasoned:

24

> Both the named Indirect Purchaser Plaintiffs and the absent members of the putative class identify **the same general cause for their injuries**: the alleged price-fixing and customer allocation conspiracy. The named Indirect Purchaser Plaintiffs merely seek relief for themselves under the statutes of the jurisdictions in which they reside, and seek similar relief for absent class members under the antitrust and consumer protection statutes of each such class member's state. **Properly understood, neither plaintiff grouping seeks relief for themselves under the laws of a foreign state jurisdiction.** The ICAC contains a mixture of state-law claims *only* because the Indirect Purchaser Plaintiffs bring this suit as a proposed class action.

*Id.* (bolding added).

The same reasoning can be applied to the case at hand. The putative class members "identify the same general cause" of injury: Defendant's form letters and policies that blatantly violate the FDCPA and various state laws regulating debt collection. Further, just like in *In re Polyurethane*, Plaintiff is not asking for relief under any other state law aside from Michigan; his complaint "contains a mixture of state-law claims *only* because [he] is bringing the suit as a proposed class action." *Id.*

Defendant quotes *Lewis v. Casey*, 518 U.S. 343, 357 (1996), for the contention that Plaintiff is required to show he suffered an injury in all states. Defendant's argument would not only produce absurd results, but it is a blatant misreading of that case. In *Lewis*, a class of prisoners was alleging constitutional violations **within** the state of Arizona. The Supreme Court held that the named plaintiff needed to show he was injured by the prison system, which is not at issue

25

here; Plaintiff has shown he was injured by Accretive. However, assuming arguendo that Defendant's reading of *Lewis* is correct, immediately following Defendant's quoted language, the Court clearly states that the pleadings may have established such an injury, but since the trial already occurred, the case was clearly past the pleading stage. *Id.* In so noting, the court quoted *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

> Since they are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.

*Id.* at 358. Here, Plaintiff's complaint clearly evidences that he has standing, and numerous cases undoubtedly establish that "class certifications issues are … 'logically antecedent' to Article III concerns." *Ortiz,* 527 U.S. at 831.

Finally, Defendant makes a number of arguments about individual statutes that must fail. First, Defendant argues that Cal. Bus. & Prof. Code § 17500 imposes a heightened pleading standard. Defendant misreads the case, however. The court in *Tayag v. National City Bank,* 2009 WL 943897, at *2 (N.D. Cal. 2009)(Ex. 13) classified Plaintiffs § 17500 claim as a fraud claim because plaintiff alleged that defendant misrepresented the true terms of the loan, which is not what

occurred in the case at hand.  *Id.*  However, assuming that Plaintiff's claim could be classified as a fraud claim under § 17500, Plaintiff has adequately met the heightened standard.  The *Tayag* court noted that Fed. R. Civ P. 9(b) "demands that, when averments of fraud are made, the circumstances constituting the alleged fraud 'be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Id.* (internal citations omitted).  Here, Plaintiff has clearly met this burden.  *See infra* § III b, pp 16-18.

Defendant next erroneously argues that some of the state laws do not regulate debt collection.  For instance Defendant cites *Walker v. Gallegos*, 167 F. Supp. 2d 1105, 1107 (D. Ariz. 2001) for the contention that the Arizona Consumer Fraud Act statute is limited to "fraud in connection with the sale or advertisement of merchandise."  However, this is a misreading of the case and statute.  Arizona courts have clearly held that money lending and collection practices are subject to the Act, and the *Walker* court recognized this. "[T]he underlying consumer loan transaction between Walker's mother and the defendant's client's assignor fell within the purview of the Consumer Fraud Act, *see Villegas v. Transamerica Financial Services, Inc.,* 147 Ariz. 100, 708 P.2d 781 (App.1985) (Court concluded that the lending of money is subject to the provisions of the Arizona Consumer Fraud Act)."  *Id.* at 1107-08. *See also Bergdale v. Countrywide Bank*

*FSB*, No., 2014 WL 2885473, at *4 (D. Ariz. June 25, 2014)(dismissing an otherwise viable claim under the Act for "Defendants' deceptive actions in processing [plaintiff's] loan" because of statute of limitations issues)(Ex. 14); *Munoz v. Fed. Nat. Mortgage Ass'n*, No., 2014 WL 3418426, at *3 (D. Ariz. July 14, 2014)(refusing to dismiss a claim under the Act where defendant's argument was virtually identical to the argument in the present case, and holding that the Act regulates mortgage lending)(Ex. 15).  Finally, Defendant argues that Connecticut requires a showing of actual damages, and that false communications are insufficient to establish a claim under Connecticut's Act.  This is a blatant misstatement of Connecticut law.  In fact, in the same opinion Defendant cites, the court stated that, "… a violation of the FDCPA constituted the denial of an implied contractual benefit, which in turn satisfied CUTPA's 'ascertainable loss' requirement." *Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270, 279 (D. Conn. 2007).  In *Gervais*, the plaintiff was not in contractual privity with the defendant, which is why the court held that plaintiff had not met the loss requirement.  However, that is not the case here, and even if it were, Plaintiff has adequately pled that he was harmed even though this is not a requirement.  *See* infra § III a, p 12.

Finally, countless state courts and statutes hold that a violation of the FDCPA is a violation of that state's consumer protection law. *See eg,* 73 Pa. Cons.

28

Stat. § 2270.4 ("It shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the Fair Debt Collection Practices Act"); *Gervais* 479 F. Supp. 2d at 279 ("[T]his Court has held that Defendant's violation of the FDCPA also constituted a violation of the [Connecticut Unfair Trade Practices Act]"); *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1303 (11th Cir. 2012)("[A] violation of the FDCPA constitutes a violation of the [Georgia Fair Business Practices Act]"); *French v. Corporate Receivables, Inc.,* 489 F.3d 402, 403 (1st Cir. 2007)("A violation of the FDCPA constitutes a **per se** violation of [Mass. Gen. Law.] Ch. 93A.")(emphasis added); *Lovelace v. Stephens & Michaels Associates, Inc*., No. 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007)(stating that the state law claims are similar to the FDCPA "and need not be addressed separately.")(Ex. 10).   By misquoting or misapplying a few court opinions, Defendant has not met his burden in bringing this motion.   Defendant has done nothing to rebut the presumption in numerous courts that violating the FDCPA is also a violation of that state's law, and therefore, Defendant's motion must be denied.

## <u>CONCLUSION</u>

WHEREFORE, for the forgoing reasons, Plaintiff requests that Defendant's Motion to Dismiss be denied.

29

Dated: January 8, 2015

Respectfully submitted,
*s/David Honigman*

David Honigman (P33146)
dhonigman@manteselaw.com
Mark Rossman (P63034)
mrossman@manteselaw.com
Brian Saxe (P70046)
bsaxe@manteselaw.com
1361 E. Big Beaver Rd
Troy, MI 48088
(248) 457-9200
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2015 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

    s/Jennifer L. Brennan
Jennifer L. Brennan
Mantese Honigman Rossman
and Williamson, P.C.
1361 E. Big Beaver Rd.
Troy, Michigan 48083
Telephone: (248) 457-9200
jbrennan@manteselaw.com