## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| Joseph Anger, | Case No. 2:14-cv-12864 |
| *Plaintiff*, on behalf of all others similarly situated | District Judge Victoria A. Roberts |
| v. | Magistrate Judge Mona K. Majzoub |
| Accretive Health, Inc. d/b/a Medical Financial Solutions, |  |
| *Defendant*. |  |

## <u>DEFENDANT'S REPLY IN SUPPORT OF ITS</u>
## <u>MOTION TO DISMISS</u>

Plaintiff's Brief in Opposition does nothing to change the simple and dispositive fact that the allegations contained within the four corners of Plaintiff's Complaint do not sufficiently allege that Accretive Health, Inc. was operating as a "debt collector" within the meaning of the Fair Debt Collection Practices Act when it attempted to secure payment on Plaintiff's active account.  Plaintiff likewise fails to sufficiently state a claim under the multiple state laws that he invokes, and fails to acknowledge that under well-established precedent, he lacks standing to assert most of those claims.  Accordingly, Plaintiff's Complaint should be dismissed.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...............................................................................i

TABLE OF AUTHORITIES ........................................................................ii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................vii

INTRODUCTION .....................................................................................1

ARGUMENT ............................................................................................2

I.      Plaintiff's FDCPA Claim (Count I) Must Be Dismissed.........................................4

        A.      Accretive Health Is Not a "Debt Collector" Under the FDCPA. ...........4

        B.      Plaintiff's Section 1692e and 1692f Claims Must Be Dismissed As Insufficiently Pled. ..................................................................8

II.     Plaintiff's Michigan-Law Claims (Counts II & IV) Should Be Dismissed. ........10

III.    Plaintiff Does Not Have Standing To Bring—And Has Not Adequately Pled—Claims Under the Laws of States and Municipalities Outside of Michigan (Counts III-V)..........................................................................11

CONCLUSION .......................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alibrandi v. Fin. Outsourcing Servs., Inc.,*
   333 F.3d 82 (2d Cir. 2003) (*per curiam*) ...................................................1, 3, 5, 8

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ......................................................................................passim

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................................2, 8, 10, 17

*Berry v. GMAC-Residential Funding Corp.,*
   No. 01-2713, 2002 WL 1797779 (W.D. Tenn. July 31, 2002)......................14

*Bridge v. Ocwen Fed. Bank,*
   681 F.3d 355 (6th Cir. 2012) ....................................................................... 4, 6

*Church v. Accretive Health, Inc.,*
   No. 14-0057, 2014 WL 7184340 (S.D. Ala. Dec. 16, 2014) ................... 1, 7, 8

*Davidson v. Worldwide Asset Purchasing, LLC,*
   914 F. Supp. 2d 918 (N.D. Ill. 2012) ...........................................................14

*Easter v. Am. West Fin.,*
   381 F.3d 948 (9th Cir. 2004) ................................................................. 13, 15

*Fed. Home Mortg. Corp. v. Lamar,*
   503 F.3d 504 (6th Cir. 2007) .........................................................................8

*Gervais v. Riddle & Assocs.,*
   479 F. Supp. 2d 270 (D. Conn. 2007).........................................................17

*Glazer v. Chase Home Fin. LLC,*
   704 F.3d 453 (6th Cir. 2013) .........................................................................5

*Gnesin v. Am. Profit Recovery,*
   No. 12-CV-12595, 2012 WL 5844686 (E.D. Mich. Nov. 19, 2012)............11

*Grden v. Leikin Ingber & Winters PC,*
   643 F.3d 169 (6th Cir. 2011) .........................................................................8

*Hoving v. Transnation Title Ins. Co.*,
  545 F. Supp. 2d 662 (E.D. Mich. 2008)....................................................... 14, 15

*In re Checking Account Overdraft Litig.*,
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) ...............................................................14

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) .............................................................15

*In re Eaton Vance Corp. Sec. Litig.*,
  220 F.R.D. 162 (D. Mass. 2004) ........................................................................14

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  Nos. MDL-1446, CIVA.H-01-3624, 2004 WL 405886 (S.D. Tex. Feb. 25, 2004)....14

*In re Flonase Antitrust Litig.*,
  610 F. Supp. 2d 409 (E.D. Pa. 2009) .................................................................15

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) .............................................................15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  289 F.3d 98 (D.C. Cir. 2002) ..............................................................................14

*In re Packaged Ice Antitrust Litig.*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011)........................................... 2, 14, 15, 16

*In re Potash Antitrust Litig.*,
  667 F. Supp. 2d 907 (N.D. Ill. 2009) .................................................................15

*In re Refrigerant Compressors Antitrust Litig.*,
  No. 2:09-MD-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012).........................15

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
  441 F. Supp. 2d 579 (S.D.N.Y. 2006) ................................................................14

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..............................................................16

*In re Uplinger*,
  No. 1:11CV1270, 2012 WL 7150435 (E.D. Va. Feb. 8, 2012) .......................................9

*In re Wellbutrin XL Antitrust Litig.*,
  260 F.R.D. 143 (E.D. Pa. 2009)..................................................................... 12, 15

*Kirkeby v. JP Morgan Chase Bank,*
    No. 13cv377, 2014 WL 7205634 (S.D. Cal. Dec. 17, 2014) ...........................................16

*Larobina v. Wells Fargo Bank,*
    No. 10-cv-01279, 2014 WL 3419534 (D. Conn. July 10, 2014) ...................................17

*Lewis v. ACB Bus. Servs., Inc.,*
    135 F.3d 389 (6th Cir. 1998) ............................................................................................3

*Lewis v. Casey,*
    518 U.S. 343 (1996) ........................................................................................................11

*Linsley v. FMS Inv. Corp.,*
    No. 11cv961, 2012 WL 1309840 (D. Conn. Apr. 17, 2012) .........................................17

*Lopez-Flores v. Resolution Trust Corp.,*
    93 F. Supp. 2d 834 (E.D. Mich. 2000)............................................................................13

*Lovelace v. Stephens & Michaels Assocs., Inc.,*
    No. 07-10956, 2007 WL 3333019 (E.D. Mich. Nov. 9, 2007).....................................10

*Madigan v. Messerli & Kramer, P.A.,*
    No. CIV. 11-2667, 2011 WL 6760354 (D. Minn. Dec. 23, 2011) .................................9

*Mahon v. Ticor Title Ins. Co.,*
    683 F.3d 59 (2d Cir. 2012) ..............................................................................................13

*Matte v. Sunshine Mobile Homes, Inc.,*
    270 F. Supp. 2d 805 (W.D. La. 2003) .............................................................................14

*Moon v. Harrison Piping Supply,*
    465 F.3d 719 (6th Cir. 2006) ...........................................................................................10

*Munoz v. Fed. Nat'l Mortg. Ass'n,*
    2014 WL 3418426 (D. Ariz. July 14, 2014)....................................................................16

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999) .............................................................................. 12, 13, 14, 15

*Parks v. Dick's Sporting Goods, Inc.,*
    No. 05-cv-6590, 2006 WL 1704477 (W.D.N.Y. June 15, 2006)...................................16

*Perry v. Se. Boll Weevil Eradication Found., Inc.,*
    154 F. App'x 467 (6th Cir. 2005)....................................................................................10

*Pollice v. Nat'l Tax Funding, L.P.*,
   225 F.3d 379 (3d Cir. 2000) ..................................................................9

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) ..............................................................13

*Sanford v. Portfolio Recovery Assocs., LLC*,
   No. 12-CV-11526, 2013 WL 5476272 (E.D. Mich. Oct. 2, 2013) ..............11

*Scheuer v. Jefferson Capital Sys., LLC*,
   No. 14-cv-11218, 2014 WL 4435874 (E.D. Mich. Sept. 9, 2014) ................8

*SFS Check, LLC v. First Bank of Del.*,
   774 F.3d 351 (6th Cir. 2014) ..............................................................16

*Smith v. Lawyers Title Ins. Corp.*,
   No. 07-12124, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009)........................15

*South v. Midwestern Audit Servs., Inc.*,
   No. CIV. A. 09-14740, 2010 WL 5088765 (E.D. Mich. Aug. 12, 2010),
   *report and recommendation adopted*,
   No. CIV. 09-14740, 2010 WL 5089862 (E.D. Mich. Dec. 8, 2010) ..........11

*Steel Co. v. Citizens For a Better Envt.*,
   523 U.S. 83 (1998)............................................................................12

*Stone v. Crispers Rests., Inc.*,
   No. 06-cv-1086, 2006 WL 2850103 (M.D. Fla. Oct. 3, 2006) ....................16

*Temple v. Circuit City Stores, Inc.*,
   Nos. 06CV5303 & 06CV5304, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007)... 14, 15

*Thomas v. Metro. Life Ins. Co.*,
   540 F. Supp. 2d 1212 (W.D. Okla. 2008)..............................................15

*Thunander v. Uponor, Inc.*,
   887 F. Supp. 2d 850 (D. Minn. 2012) ..................................................14

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ........................................................................11

*Vill. of Oakwood v. State Bank & Trust Co.*,
   539 F.3d 373 (6th Cir. 2008) ..............................................................13

*Walker v. Gallegos*,
   167 F. Supp. 2d 1105 (D. Ariz. 2001) ..............................................................17

*Wallace v. Washington Mut. Bank, F.A.*,
   683 F.3d 323 (6th Cir. 2012) ............................................................................8

*Wise v. Cavalry Portfolio Servs. LLC*,
   No. 09-cv-86, 2010 WL 1286884 (D. Conn. Mar. 30, 2010) .........................17

## Statutes, Rules and Regulations

15 U.S.C. § 1692 .....................................................................................................2

15 U.S.C. § 1692a ...........................................................................................1, 2, 3

15 U.S.C. § 1692d ....................................................................................................3

15 U.S.C. § 1692e ................................................................................................8, 9

15 U.S.C. § 1692f .............................................................................................3, 8, 9

Fed. R. Civ. P. 23 ...................................................................................................14

Fed. R. Civ. P. 9(b) ................................................................................................16

S. Rep. 95-382 (1977) ..............................................................................................2

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Page(s)**

**Cases**

*Alibrandi v. Fin. Outsourcing Servs., Inc.*,
  333 F.3d 82 (2d Cir. 2003) (*per curiam*) ............................................... 1, 3, 5, 8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................passim

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................2, 8, 10, 17

*Bridge v. Ocwen Fed. Bank*,
  681 F.3d 355 (6th Cir. 2012) ........................................................... 4, 6

*In re Packaged Ice Antitrust Litig.*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011).......................................... 2, 14, 15, 16

*In re Refrigerant Compressors Antitrust Litig.*,
  No. 2:09-MD-02042, 2012 WL 2917365 (E.D. Mich. July 17, 2012).........................15

*In re Wellbutrin XL Antitrust Litig.*,
  260 F.R.D. 143 (E.D. Pa. 2009)................................................... 12, 15

*Lewis v. Casey*,
  518 U.S. 343 (1996) ...........................................................................11

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ........................................................... 12, 13, 14, 15

*Smith v. Lawyers Title Ins. Corp.*,
  No. 07-12124, 2009 WL 514210 (E.D. Mich. Mar. 2, 2009)........................................15

*Steel Co. v. Citizens For a Better Envt.*,
  523 U.S. 83 (1998)...........................................................................12

**Statutes, Rules and Regulations**

15 U.S.C. § 1692a...........................................................................1, 2, 3

15 U.S.C. § 1692f...........................................................................3, 8, 9

## **INTRODUCTION**

Plaintiff's Opposition ("Opp'n") only reinforces the conclusion that Defendant falls outside the FDCPA's reach: Plaintiff's own allegations establish that his account simply "was not in default at the time it was obtained" by Accretive Health.  15 U.S.C. § 1692a(6)(F)(iii).  As an initial matter, Plaintiff appears to concede that his debt was not <u>objectively</u> "in default" when Accretive Health obtained it.  Compl. ¶¶ 15, 16, 18 19.  In order to invoke the FDCPA, Plaintiff instead relies on the conclusory allegation that Accretive Health "treated" his debt as defaulted.  Opp'n 8-12.  But that allegation is belied by the very letter Accretive Health sent, which described the account as having an "active balance . . . with St. Mary's." *Id.* ¶¶ 6, 16.  Not until several weeks later did Accretive Health's communications begin to classify Plaintiff's account as "past due." *Id.* ¶ 19.  It is well-established that debt is not yet "in default" for purposes of the FDCPA when it is newly "past due"—much less when it is not yet past due. *See Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 87 (2d Cir. 2003) (*per curiam*).  The recent decision in *Church v. Accretive Health, Inc.*, is not to the contrary: in determining that Church had adequately pled that her account was in default, the *Church* court placed primary emphasis on the nearly 13-month delay between Church's treatment and her account's transfer to Accretive Health.  No. 14-0057, 2014 WL 7184340, at *4 (S.D. Ala. Dec. 16, 2014).  There is no such delay here—by Plaintiff's own allegations, Accretive Health began servicing his account within 90 days of his incurring the debt at issue. *See* Compl. Ex. A.

Plaintiff's state-law claims fare no better, as they fail to provide even the "formulaic recitation of the elements of a cause of action" that the Supreme Court has deemed insufficient to satisfy a Plaintiff's pleading burden. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, Plaintiff lacks standing to assert claims under the laws of states in which he has suffered no injury. As most interpreting courts have held, the Supreme Court precedents upon which Plaintiff relies do not apply when a named plaintiff's standing is at issue. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 654 (E.D. Mich. 2011). Plaintiff's Complaint must be dismissed.

## ARGUMENT

The Fair Debt Collections Practices Act ("FDCPA") was enacted to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), "without imposing unnecessary restrictions on ethical debt collectors." S. REP. 95-382, at 1 (1977). To walk that narrow line, Congress carefully targeted a specific class of debt collector it saw as the "prime source of egregious collection practices." *Id.* at 2. That class of debt collector is utterly "independent" from the original creditor; as non-repeat players, such debt collectors "often are unconcerned with the consumer's opinion of them." *Id.* These debt collectors collect bad debt—defaulted debt that creditors have already written off as uncollectable—and, thus, "generally operate on a 50-percent commission," which creates "the incentive to collect by any means." *Id.* And, these debt collectors engage in abusive practices like "obscene or profane language, threats of violence [and] telephone calls at unreasonable hours." *Id.*

2

The FDCPA is carefully crafted to selectively target these rogue debt collectors. To that end, it excludes creditors and in-house collectors from its reach.  *See Alibrandi* 333 F.2d at 85; 15 U.S.C. § 1692a(6)(B)&(F).  Moreover, it covers <u>only</u> those debt collectors who pursue defaulted debt, the debt whose difficult and lucrative collection is mostly likely to spark the use of unconscionable means.  *See id.* § 1692a(6)(F)(iii). Finally, it imposes liability for the use of harassment, false misrepresentation, or unfair practices in debt collection, 15 U.S.C. §§ 1692d-1692f, but permits those practices which facilitate the work of "honest debt collectors seeking a peaceful resolution," *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998).

Accretive Health differs starkly from the debt collectors Congress sought to regulate through the FDCPA.  While not formally a creditor or in-house collections agency, Accretive Health is—and represents itself as—the functional equivalent of an "'extended billing office for St. Mary's.'"  Compl. ¶ 23; *see also id.* at Exs. A & B (stating, in letter to Plaintiff, that Accretive Health "works directly with St. Mary's of Michigan Standish Hospital").  Far from pursuing bad or defaulted debt, Accretive Health contacted Plaintiff when his balance with St. Mary's was still "active."  *Id.* And, the most egregious collection practice Plaintiff alleges is the sending of two polite, accurate letters and the leaving of one voicemail "to discuss 'an account.'" Compl. ¶¶ 16, 19, 28.  Upon the facts alleged in the Complaint, Accretive Health falls outside the FDCPA's reach.

I.      **Plaintiff's FDCPA Claim (Count I) Must Be Dismissed.**

   A.      **Accretive Health Is Not a "Debt Collector" Under the FDCPA.**

In the Sixth Circuit, the definition of "debt collector" has both an objective and a subjective component: it "includes any non-originating debt holder that either acquired a debt in default or has treated the debt as it if were in default at the time of acquisition." *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 362 (6th Cir. 2012). Plaintiff appears to concede that he has alleged no facts from which this Court could infer that his debt was objectively "in default"—as opposed to merely "due" or "past due"—when it was transferred to Accretive Health. Indeed, the Complaint leads to the opposite inference. *See* Compl. ¶ 18 ("Plaintiff was, therefore, at all times in compliance with both his original agreement with St. Mary's Hospital and his subsequent agreement with Defendant debt collector."); Opp'n 4 n.2 ("During all relevant times, Plaintiff's payments were either current or paid ahead of schedule.").

Instead, Plaintiff shifts the discussion to whether Accretive Health "treated" his debt as "in default." Opp'n 8-12. That strategy is unavailing: no fair reading of Plaintiff's Complaint permits the inference that Accretive Health subjectively "treated" Plaintiff's debt as if it were ever in default—let alone in default at the time of acquisition. Most tellingly, the opening line of Accretive Health's first letter describes Plaintiff as having an "active balance." *See* Compl. ¶¶ 6, 16 & Ex. A ("You have an active balance of $219.01 with St. Mary's of Michigan Standish Hospital."). The significance of that language is highlighted by the similar letter Plaintiff allegedly

received from Accretive Health four weeks later, which replaces the word "active" with the words "past due." *See* Compl. ¶ 19 & Ex. B ("You have a balance of $169.01 with St. Mary's of Michigan Standish Hospital that is <u>past due</u> . . . ").

The inference is clear: if Plaintiff's account was not "past due" until Accretive Health sent its second letter, it must have been <u>current</u> ("active") at the time of the initial letter (i.e., when Accretive Health first took over Plaintiff's account). It is well-established that a debt that is newly past due—as Plaintiff's was by the second letter—is not in default: "[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." *Alibrandi*, 333 F.3d at 87 (collecting authorities). A fortiori, it is beyond cavil that Defendant's first letter did not treat Plaintiff's debt as being in default: <u>no federal court</u> has ever held a debt that is <u>not yet past due</u> to be "in default" for purposes of the FDCPA. *Cf. Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013) (the "not in default" exception "applies to a person collecting a debt asserted to be owed or due [ ] another when the efforts concern a debt that was current when first obtained by the person") (internal quotation omitted).

That Accretive Health's letters did not "treat" Plaintiff's debt as "in default" is reinforced by the fact that each letter specified that Plaintiff's balance was "due . . . upon receipt." *See* Compl. Exs. A & B. Plaintiff implicitly concedes the significance of that language. He faults Accretive Health's letters for "falsely stat[ing] that $219.01

[was] 'due . . . upon receipt'" when, he claims, only the $50 he was scheduled to pay as part of his payment plan was actually "due." Compl. ¶ 16. By equating the status of the debt Accretive Health sought to collect and the status of the debt Plaintiff concedes he owed, Plaintiff makes clear that Accretive Health was not treating his debt as if it were in default; Plaintiff repeatedly asserts that his scheduled payment plan payments were always "current or paid ahead of schedule." *See* Opp'n 4 n.2; Compl. ¶ 18.

In that respect, this case could not present a stronger contrast with *Bridge*, upon which Plaintiff places heavy reliance. In *Bridge*, there was no question that the defendant had treated the plaintiff's debt as in default: the defendant had "engaged in years of collection activity <u>claiming [Plaintiff's] mortgage [wa]s in default</u>." 681 F.3d at 361. Moreover, "unremitting collection activity was undertaken, foreclosure proceedings were instituted, and the credit of two consumers was seriously impaired." *Id.* at 356. Here, by contrast, Plaintiff alleges that he received two (polite) letters and one phone call from Accretive Health over a period of six weeks, Compl. ¶¶ 16, 17, 19, 28, and that Accretive Health repeatedly reiterated that it—unlike collectors of bad debt or defaulted debt—was "non-credit reporting." Compl. ¶ 22 & Exs. A & B.

In his haste to shoehorn this case into *Bridge*, Plaintiff now claims that Accretive Health "used scare tactics against Plaintiff" and that the language of Accretive Health's letters "suggests that [Plaintiff's] account is already in default." Opp'n 10-11. In his Complaint, however, he suggested the opposite, faulting

6

Accretive Health for "creat[ing] the impression that . . . Defendant is not acting as a debt collector or collection agency with respect to Plaintiff's family."  Compl. ¶ 23.  In short, Plaintiff's Complaint makes clear that his debt, unlike Bridge's, was not treated as "in default."

Plaintiff's reliance on the recent decision in *Church v. Accretive Health* is similarly misplaced, for three reasons.  <u>First</u>, the *Church* court found Church to have sufficiently alleged that her account was in default when transferred to Accretive Health primarily because the debt was then "more than 12 months past due."  2014 WL 7184340, at *4.  Here, that extended time period was simply not present; Plaintiff's debt was incurred on February 7, 2014, and he was contacted by Accretive Health on May 1, 2014—less than 90 days later.  *See* Compl. Ex. A.  <u>Second</u>, Plaintiff overreads *Church*'s analysis of the form letter both Anger and Church received.  The *Church* Court did no more than decide that the letter, <u>when "considered in conjunction with the pleading's other factual allegations</u>," could be consistent with the collection of either defaulted or undefaulted debt.  *See* 2014 WL 7184340, at *6 (emphasis added).  That conclusion was understandable in light of both the extended age of the account (which is not present here) and the limited materials before the *Church* court: because Church had received only one letter—an "active balance" letter—from Accretive Health, the *Church* court lacked the interpretive foil of the later "past due" letter to clarify that Anger's "active" account was not yet "past due" at the legally significant moment it was transferred to Accretive Health.  <u>Finally</u>, *Church* rejected the only standard under

7

which Anger's account could possibly be in default: "[o]f course, Accretive Health is correct that case law rejects the proposition 'that default occurs <u>immediately</u> after a debt becomes due.'" *Id.* at *5 (quoting *Alibrandi*, 333 F.3d at 87).

## B.    Plaintiff's Section 1692e and 1692f Claims Must Be Dismissed As Insufficiently Pled.

Plaintiff's Opposition also confirms that he has not carried his burden in pleading his Section 1692e and 1692f claims.[1]  Plaintiff now attempts to bolster the "formulaic recitation" of the statute in his Complaint, *Twombly*, 550 U.S. at 555, by alleging that his real claim under 15 U.S.C. § 1692f's "unfair or unconscionable means" provision is not merely a generalized grievance duplicative of his Section 1692e claims, but rather is premised on Defendant's failure to honor his alleged payment plan.  That failure, Plaintiff alleges, runs afoul of Section 1962f(1)'s prohibition on "[t]he

---

[1] With respect to Section 1692e, Plaintiff spends the bulk of his Response down a rabbit hole, discussing the "subtle" difference between the "unsophisticated" and the "least sophisticated" consumer.  Opp'n 14.  The relevant case law describes both an unsophisticated and least sophisticated consumer.  *See Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011); *Scheuer v. Jefferson Capital Sys., LLC*, No. 14-cv-11218, 2014 WL 4435874, at *5 (E.D. Mich. Sept. 9, 2014).  That distinction is immaterial here:  the statement that Plaintiff had "an active balance of $219.01 with St. Mary's," was accurate both with respect to the "amount" owed ($219.01) and the debt's "character" and "legal status" (an active debt on the books of St. Mary's Hospital).  *See* Compl. ¶ 16 & Ex. A; 15 U.S.C. § 1692e(2)(A).  And, it strains credulity to argue that even the least sophisticated consumer could misinterpret Accretive Health's letters, which instruct the debtor to "remit payment using the payment coupon above," as being sent by a consumer advocacy group; even the least sophisticated consumer is presumed to have "a basic level of understanding."  *Fed. Home Mortg. Corp. v. Lamar*, 503 F.3d 504, 510 (6th Cir. 2007).

collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Opp'n 18.

That claim must fail. Plaintiff does not deny that the $219.01 (and, later $169.01) Accretive Health sought to collect accurately reflected the amount he was initially charged by St. Mary's in the "agreement creating the debt." *See* Compl. ¶ 16, 19. Any attempt to collect that authorized amount more quickly than envisioned by a payment plan is not cognizable as a violation of Section 1692f(1). *See Madigan v. Messerli & Kramer, P.A.*, No. CIV. 11-2667, 2011 WL 6760354, at *2 (D. Minn. Dec. 23, 2011) (dismissing Section 1692f claim because, even if Defendant's representations were "contrary to the . . . agreed upon payment plan, the FDCPA does not require compliance with an informal arrangement"); *In re Uplinger*, No. 1:11CV1270, 2012 WL 7150435, at *1 (E.D. Va. Feb. 8, 2012), *aff'd sub nom. Uplinger v. Rees Broome, P.C.*, 475 F. App'x 28 (4th Cir. 2012) (*per curiam*) (affirming summary judgment in favor of Defendant on Section 1962f(1) claim because "there was no enforceable agreement that [Plaintiff's] payment of the amount she had proposed to pay, which was less than her total outstanding debt, would extinguish her delinquency, [so] it cannot be said that [Defendant] attempted to collect an amount other than the one expressly authorized by the agreement creating [her] debt"); *cf. Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 408 (3d Cir. 2000) (in seeking to collect interest and penalties from Plaintiff, Defendant could not "rely on the [provision for such fees in Plaintiff's] payment plans, as the plans are not the 'agreement creating the debt'").

9

## II.    Plaintiff's Michigan-Law Claims (Counts II & IV) Should Be Dismissed.

Plaintiff's allegations that Accretive Health violated Michigan's Fair Debt Collection Practices Act (MFDCPA) similarly fail.  In one breath, Plaintiff seeks to save his Complaint by suggesting that his Michigan state-law claims are similar to the FDCPA and "'need not be addressed separately.'"  Opp'n 29 (quoting *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007)).  And in another, he contends that the MFDCPA's requirements differ so significantly that the analysis should not be the same.  *See* Opp'n 22-23 (suggesting that the MFDCPA's scope differs from the FDCPA's).  Plaintiff is correct that the MFDCPA does not have the FDCPA's explicit statutory exception for "defaulted debt."  But Plaintiff has not even provided "a formulaic recitation of the elements" of his MFDCPA claim, much less "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

In any event, because Plaintiff has failed to state a claim under the FDCPA, the "clear rule of this circuit" is that this Court should refuse to exercise supplemental jurisdiction over his state-law claims.  *Perry v. Se. Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 478 (6th Cir. 2005) (internal quotation omitted).  "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citation omitted).  Instead, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for

10

them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also ibid.* ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

Accordingly, courts in this district routinely dismiss claims brought under the MFDCPA once they have dismissed a plaintiff's related FDCPA claims. *See, e.g.*, *Gnesin v. Am. Profit Recovery*, No. 12-CV-12595, 2012 WL 5844686, at *4 (E.D. Mich. Nov. 19, 2012); *Sanford v. Portfolio Recovery Assocs., LLC*, No. 12-CV-11526, 2013 WL 5476272, at *1 (E.D. Mich. Oct. 2, 2013); *South v. Midwestern Audit Servs., Inc.*, No. CIV. A. 09-14740, 2010 WL 5088765, at *7 (E.D. Mich. Aug. 12, 2010), *report and recommendation adopted*, No. CIV. 09-14740, 2010 WL 5089862 (E.D. Mich. Dec. 8, 2010).  The same result is appropriate here.

## III.  Plaintiff Does Not Have Standing To Bring—And Has Not Adequately Pled—Claims Under the Laws of States and Municipalities Outside of Michigan (Counts III-V).

It is black-letter law that, in order to demonstrate standing, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation omitted).  Accordingly, Plaintiff lacks standing to assert claims under the laws of any state other than Michigan.

Plaintiff argues that a standing determination is premature prior to class certification, citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v.*

11

*Fibreboard Corp.*, 527 U.S. 815 (1999), for the broad proposition that class certification issues are "logically antecedent" to questions of standing. But, as most federal courts have recognized, *Amchem* and *Ortiz*'s "logical antecedence" holding is limited to the unusual procedural posture of those cases. In both cases, the standing of a subset of putative class members—<u>not</u> the standing of named plaintiffs—was questioned during a pre-class-certification global settlement proceeding. *See Amchem*, 521 U.S. at 597, 612; *Ortiz*, 527 U.S. at 825-827, 830-31. Accordingly, in each case, class certification issues would determine whether the parties whose standing was suspect <u>were even before the court</u>. As such, the court did not need to address standing in order to ensure its jurisdiction: the standing issues simply "would not exist but for the [class-action] certification." *Amchem*, 521 U.S. at 612 (alteration in original); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 153 (E.D. Pa. 2009) ("To rule on the issue of standing at that point in the case would have required the [*Ortiz*] Court to make a determination as to the standing of persons who were not actually parties to the case, but who were only proposed parties to the case.").

Here, by contrast, it is the named plaintiff who lacks standing <u>with respect to his own claims</u>. As that plaintiff is already before the court, the court bears its usual obligation to ensure its own jurisdiction before proceeding to any merits determinations. *See Steel Co. v. Citizens For a Better Envt.*, 523 U.S. 83, 88-89 (1998). Indeed, the Supreme Court was careful to limit its holdings in *Amchem* and *Ortiz* to the unique circumstances under which those cases arose, reaffirming the principle that

"[o]rdinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits." *Ortiz*, 527 U.S. at 831.[2]

Unsurprisingly, nearly every court of appeals to consider the question has read *Amchem* and *Ortiz*'s "logical antecedence" holding as establishing only a narrow exception to the bedrock legal principle that jurisdiction must be assured before merits may be considered. *See, e.g.*, *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("Although the court in [*Ortiz*] examined class issues before the question of Article III standing, it did so in the very specific situation of a mandatory global settlement class. [*Ortiz*] does not require courts to consider class certification before standing."); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64-65 (2d Cir. 2012) ("We do not read [*Amchem* and *Ortiz*'s 'logical antecedent' language] as instructing courts to always treat class certification first and to treat the class as the relevant entity for Article III purposes."); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 & n.6 (5th Cir. 2002) (finding the *Amchem/Ortiz* "exception" inapplicable because, "[i]n the instant case, in contrast to *Ortiz* and *Amchem* . . . class certification did not create the jurisdictional issue."); *cf. In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir.

---

[2] The Supreme Court further cabined its rulings by clarifying that the class certification issues in *Amchem* and *Ortiz* had special claims to priority since they "themselves pertain to statutory standing, which may properly be treated before Article III standing." *Ortiz*, 527 U.S. at 831; *see Lopez-Flores v. Resolution Trust Corp.*, 93 F. Supp. 2d 834, 838 n.12 (E.D. Mich. 2000) (glossing *Ortiz* as establishing that "if the merits are bound up with issues of statutory standing that are 'logically antecedent' to issues of justiciability, statutory standing should be addressed first"), *overruled on other grounds by Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008).

2002) ("[t]he question of constitutional standing [ ] is a prerequisite to Rule 23 class certification because it goes to the court's jurisdiction").  A significant majority of district courts have come to the same conclusion.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 654 (E.D. Mich. 2011) ("[N]either *Ortiz* nor *Amchem* requires that Article III standing issues be deferred until a class has been certified.").[3]

No court of appeals has addressed the precise situation here, in which a named plaintiff brings claims under state statutes under which he himself has no standing but that could afford standing to putative class members.[4]  However, in this district—as in most others—consensus has emerged that such claims are properly dismissed.  To be sure, the first court to address the question permitted a named plaintiff to bring claims under state statutes that afforded standing only to members of his putative class.  *See Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 666 (E.D. Mich. 2008).  But, it

---

[3] *See also, e.g.*, *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918, 922 (N.D. Ill. 2012); *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 863 (D. Minn. 2012); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324–25 (S.D. Fla. 2010); *Temple v. Circuit City Stores, Inc.*, Nos. 06CV5303 and 06CV5304, 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 606 (S.D.N.Y. 2006); *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 166–70 (D. Mass. 2004); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, Nos. MDL-1446, CIVA.H-01-3624, 2004 WL 405886, at *23 (S.D. Tex. Feb. 25, 2004); *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 822 (W.D. La. 2003); *Berry v. GMAC-Residential Funding Corp.*, No. 01-2713, 2002 WL 1797779, at *9 (W.D. Tenn. July 31, 2002).

[4] Contrary to Anger's suggestion, the Sixth Circuit has not directly addressed this issue.  *See* Opp'n 23.  Rather, the <u>district</u> court precedent he cites as establishing Sixth Circuit law squarely states the contrary.  *See Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 666 (E.D. Mich. 2008) ("The Sixth Circuit has not addressed the issue directly.").

14

did so without the benefit of *In re Wellbutrin*, 260 F.R.D. at 152-56, the leading case on this question, and without addressing the court of appeals cases recognizing that *Ortiz* and *Amchem* govern only the very specific context in which they were decided. Accordingly, <u>every</u> subsequent court in this district to decide the issue has rejected *Hoving* as unpersuasive. *See, e.g.*, *In re Packaged Ice*, 779 F. Supp. 2d at 654 (noting *Hoving*'s contrary position before following *Wellbutrin* and dismissing named plaintiff's claims under state statutes other than his own for lack of standing); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2012 WL 2917365, at *1, *5-6 (E.D. Mich. July 17, 2012) (finding *In re Packaged Ice* and *Wellbutrin* "persuasive" and dismissing named plaintiff's claims under state statutes other than his own for lack of standing); *Smith v. Lawyers Title Ins. Corp.*, No. 07-12124, 2009 WL 514210, at *3 (E.D. Mich. Mar. 2, 2009) (citing *Easter* in rejecting *Hoving*; "after a review of the relevant case law, the Court is persuaded that the 'logical antecedent' language should be construed in a manner that permits consideration of the standing issue now, prior to class certification").[5] The same result is appropriate here. The alternative would allow

---

[5] This district's consensus is also the strong majority position among other federal courts. *See, e.g.*, *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 920–923 (N.D. Ill. 2009) (named plaintiffs in putative class action did not have standing to assert claims under state statutes which would afford standing only to members of putative class)*, vacated on other grounds*, 657 F.3d 650 (7th Cir. 2011); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 418–19 (E.D. Pa. 2009) (same); *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1224-25 (W.D. Okla. 2008) (same); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026–1027 (N.D. Cal. 2007) (same); *Temple*, 2007 WL 2790154, at *8 (same); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106–07 (N.D. Cal. 2007) (same); *Stone v. Crispers Rests., Inc.*, No. 06-cv-1086,

a plaintiff with no injuries under the laws of nearly every state to "piggy-back" on the claims of the class members he claimed to represent in order "to embark on lengthy class discovery with respect to injuries in potentially every state in the Union." *In re Packaged Ice*, 779 F. Supp. 2d at 655-56.

In any event, to the extent the dozens of state and municipal laws Plaintiff cites also mirror the FDCPA, *see* Opp'n 28-29, those claims should be dismissed for failure to meet basic pleading obligations, *see supra* Part I.A, including failure to plead any specific conduct outside the state of Michigan.[6] "[A] plaintiff's obligation to provide

---

2006 WL 2850103 (M.D. Fla. Oct. 3, 2006) (same); *Parks v. Dick's Sporting Goods, Inc.*, No. 05-cv-6590, 2006 WL 1704477 (W.D.N.Y. June 15, 2006) (same); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (same).

[6] Tellingly, Plaintiff fails to even address the fatal flaws Accretive Health highlighted with respect to his claims under Alabama, Minnesota, Iowa, and Nevada law. *Compare* Motion to Dismiss at 18 *with* Opp'n at 26-28. Nor are Plaintiff's smoke-and-mirrors attempts to save his claims under California, Arizona, and Connecticut law successful. For example, Plaintiff suggests that the facts he has pled would satisfy the heightened Rule 9(b) pleading burden required by California law. Opp'n 26-27. But, "to satisfy Rule 9(b), a plaintiff must generally . . . identify the fraudulent scheme and the <u>fraudulent intent</u> of the defendant; and [ ] <u>describe the injury</u> resulting from the fraud." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014) (emphasis added); *see also Kirkeby v. JP Morgan Chase Bank*, No. 13cv377, 2014 WL 7205634, at *7 (S.D. Cal. Dec. 17, 2014) (dismissing claim where Plaintiff failed to show that she had relied on Defendants' representations). Here, Plaintiff has not alleged injury, and does not even claim to have alleged fraudulent intent or reliance.

Similarly, the cases Plaintiff cites in support of his Arizona-law claim demonstrate only that Arizona has read its Consumer Fraud Act, which prohibits fraud "in connection with the sale or advertisement of any merchandise," to cover fraudulent inducement to enter into or modify a loan. *See Munoz v. Fed. Nat'l Mortg. Ass'n*, 2014 WL 3418426, at *3 (D. Ariz. July 14, 2014) ("the money in a loan is merchandise, the loan itself is a sale, and an oral inducement to take a loan is an advertisement"). Unlike money lending, debt collection does not fall within the

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555.  And, for the reasons discussed above, *see supra* Part II, to the extent this Court dismisses Plaintiff's FDCPA claim, it should refrain from exercising supplemental jurisdiction over any ancillary state-law claims.

## **CONCLUSION**

For the reasons set out above and in Accretive Health's opening memorandum, Plaintiff's Complaint should be dismissed with prejudice.

---

statute's reach: "[a]llegations made in a complaint to repossess collateral are too attenuated from the underlying loan sale/advertisement to come within the statute's purview." *Walker v. Gallegos*, 167 F. Supp. 2d 1105, 1108 (D. Ariz. 2001).

Finally, Plaintiff's arguments regarding Connecticut law are simply incorrect: he quotes from *Gervais v. Riddle & Assocs.* for the proposition that "'a violation of the FDCPA constituted the denial of an implied contractual benefit, which in turn satisfied CUTPA's 'ascertainable loss' requirement.'"  *See* Opp'n 28 (quoting 479 F. Supp. 2d 270, 279 (D. Conn. 2007)).  But, Plaintiff neglects to clarify that *Gervais* quoted the cited language in order to <u>disparage</u> it as "Plaintiff's novel argument," which the Court had previously adopted only in the very opinion *Gervais* vacated.  479 F. Supp. 2d at 279; *Larobina v. Wells Fargo Bank*, No. 10-cv-01279, 2014 WL 3419534, at *3 n.1 (D. Conn. July 10, 2014) ("The decision in *Gervais I* was later vacated . . . [and the court] cast doubt on the relevant conclusion.").  Indeed, courts routinely cite *Gervais* for the proposition that a CUTPA claim requires ascertainable damages beyond the mere violation of the implied contractual benefit assured by the FDCPA. *See Larobina*, 2014 WL 3419534, at *3 n.1; *Linsley v. FMS Inv. Corp.*, No. 11cv961, 2012 WL 1309840, at *7 (D. Conn. Apr. 17, 2012); *Wise v. Cavalry Portfolio Servs. LLC*, No. 09-cv-86, 2010 WL 1286884 (D. Conn. Mar. 30, 2010).

More fundamentally, Plaintiff's efforts prove the point: his Complaint falls far short of *Twombly*'s pleading requirements with respect to the 40-plus state laws he cites.  It is not incumbent on this court to parse the language of each statute, where plaintiff has neither recited their basic elements nor pled facts sufficient to show that he can plausibly state a claim under each one.  Under such circumstances, neither the Court nor Defendant "has fair notice of what [each of the claims are] and the grounds upon which [they] rest[]."  *Twombly*, 550 U.S. at 555 (internal quotations omitted).

17

Dated: February 9, 2014                    Respectfully Submitted,

                                           */s/  Claire M. Murray*
                                           Leonid Feller (P73639)
                                           Kirkland & Ellis LLP
                                           300 North LaSalle
                                           Chicago, IL 60654
                                           Telephone: (312) 862-2000
                                           Fax: (3012) 862-2200
                                           leonid.feller@kirkland.com

                                           Jennifer G. Levy
                                           Claire M. Murray
                                           Kathleen A. Brogan
                                           Kirkland & Ellis LLP
                                           655 Fifteenth St., N.W.
                                           Washington, D.C. 20005
                                           Telephone: (202) 879-5000
                                           Fax: (202) 879-5200
                                           jlevy@kirkland.com
                                           claire.murray@kirkland.com
                                           kathleen.brogan@kirkland.com

                                           *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 9, 2014, I electronically filed the foregoing DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.


Dated:  February 9, 2014                         /s/ *Claire M. Murray*
                                                 _____